UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOANNE E. DANKER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) Case No. |
| Plaintiff, | ) ) ) |
| v. | ) CLASS ACTION COMPLAINT ) ) |
| PAPA JOHN'S INTERNATIONAL, INC., JOHN H. SCHNATTER, STEVE M. RITCHIE, and LANCE F. TUCKER, | ) JURY TRIAL DEMANDED ) ) ) |
| Defendants. | ) |

Plaintiff Joanne E. Danker ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Papa John's International, Inc. ("Papa John's"), analysts' reports and advisories about Papa John's, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Papa John's securities between February 25, 2014 through July 19, 2018, both dates inclusive (the "Class Period"),

seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against Papa John's and certain of its top officials.

2.     Papa John's operates and franchises pizza delivery and carryout restaurants under the Papa John's trademark in the United States and internationally.  Papa John's is among the largest carryout and pizza delivery restaurant chains in the United States.

3.     Papa John's was founded in 1984 by Defendant John Schnatter ("Schnatter") and is headquartered in Louisville, Kentucky.  Its common stock trades on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "PZZA".

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding Papa John's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Papa John's executives, including Defendant Schnatter, had engaged in a pattern of sexual harassment and other inappropriate workplace conduct at the Company; (ii) Papa John's Code of Ethics and Business Conduct was inadequate to prevent the foregoing misconduct; (iii) the foregoing conduct would foreseeably have a negative impact on Papa John's business and operations, and expose Papa John's to reputational harm, heightened regulatory scrutiny, and legal liability; and (iv) as a result, Papa John's public statements were materially false and misleading at all relevant times.

5.     On July 10, 2018, post-market, and July 11, 2018, media outlets reported that Papa John's founder, Defendant Schnatter, had used a racial slur during a conference call in May 2018.

2

6.      On this news, Papa John's stock price fell $2.46 per share, or 4.84%, to close at $48.33 per share on July 11, 2018.

7.      Later that day, Papa John's announced Schnatter's resignation as chairman of Papa John's board.

8.      Then, on July 19, 2018, *Forbes* published an article entitled "The Inside Story of Papa John's Toxic Culture."   Citing "interviews with 37 current and former Papa John's employees—including numerous executives and board members," the *Forbes* article reported that "Schnatter's alleged behavior ranges from spying on his workers to sexually inappropriate conduct, which has resulted in at least two confidential settlements."   The *Forbes* article further reported that "[t]o protect himself, Schnatter . . . installed loyalists in the firm's top ranks, who enabled its 'bro' culture."

9.      On this news, Papa John's stock price fell $2.60 per share, or 4.85%, to close at $51.00 per share on July 19, 2018.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Papa John's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

13.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Papa John's securities trade on the NASDAQ, located within this Judicial District.

14.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.     Plaintiff, as set forth in the attached Certification, acquired Papa John's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.     Defendant Papa John's is incorporated in Delaware, with principal executive offices located at 2002 Papa John's Boulevard, Louisville, Kentucky 40299.  Papa John's common stock trades on the NASDAQ under the ticker symbol "PZZA".

17.     Defendant Schnatter served as Papa John's CEO from April 2011 to December 2017.

18.     Defendant Steve M. Ritchie ("Ritchie") has served as Papa John's CEO since January 2018 and as its President since July 2015.

19.     Defendant Lance F. Tucker ("Tucker") has served at all relevant times as Papa John's Chief Financial Officer.

20.     The Defendants referenced above in ¶¶ 17-19 are sometimes referred to herein as the "Individual Defendants."

21.     The Individual Defendants possessed the power and authority to control the contents of Papa John's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Papa John's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Papa John's, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

22.     Papa John's operates and franchises pizza delivery and carryout restaurants under the Papa John's trademark in the United States and internationally.  Papa John's is among the largest carryout and pizza delivery restaurant chains in the United States.

### Materially False and Misleading Statements Issued During the Class Period

23.     The Class Period begins on February 25, 2014, when Papa John's filed an annual report on Form 10-K with the SEC, announcing Papa John's financial and operating results for the quarter and year ended December 31, 201 (the "2013 10-K").  In the 2013 10-K, with respect to the significance of its brand value and the potential impact of negative publicity, Papa John's merely made the following non-specific representation:

> *Our success depends on the differentiation of our brand and maintaining the value and quality reputation of our brand,* ***and any damage to consumers' perception of our brand may negatively impact our business and profitability****.*

5

Our results depend upon our ability to differentiate our brand and our reputation for quality. Our brand has been highly rated in U.S. surveys and *we strive to build the value of our brand* as we develop international markets. The value of our brand and demand for our products could be damaged by incidents that harm consumer perceptions of the Company and our brand, such as product recalls, food safety issues, privacy breaches, and related negative publicity. Social media can be used to promote adverse consumer perceptions with significantly greater speed and scope than traditional media outlets.  As a result, the value of our brand and the demand for our products could be damaged and have an adverse effect on our financial results.

(Emphases added.)

24.     Likewise, in the 2013 10-K, with respect to its compliance with applicable laws and regulations, Papa John's provided only the following non-specific representation:

We are subject to numerous laws and regulations governing our workforce and our operations. Changes in these laws, including health care legislation and minimum wage increases or additional laws could increase costs for our system-wide operations.  .  .  .  We operate in an increasingly complex regulatory environment, and the cost of regulatory compliance is increasing. *Failure to comply with applicable U.S. and international labor, health care, food, anti-bribery and corruption, consumer and other laws, may result in civil and criminal liability, damages, fines and penalties. This could harm our reputation, limit our ability to grow and adversely affect our financial performance*."

(Emphasis added.)

25.     Additionally, Papa John's stated in the 2013 10-K that "[w]e have adopted a written code of ethics [(the "Code of Ethics and Business Conduct")] that applies to our directors, officers and employees."[1]

26.     Papa John's Code of Ethics and Business Conduct expressly states that it "*applies to all officers, directors* and team members of Papa John's International, Inc., and its affiliates

---

[1] Upon information and belief, the contents of the Code of Ethics and Business posted in the "Investor Relations" page of Papa John's corporate website (https://ir.papajohns.com/static-files/2f3a19d7-4de1-4dd3-b0fc-8cb32ffd13b1) as of August 28, 2018 were identical in sum and substance throughout the Class Period.

and subsidiaries, wherever located." (emphasis added.)  Further, the Code of Ethics and Business

Conduct provides that:

> Papa John's complies with all applicable labor and employment laws and regulations, and it is committed to providing equal employment opportunities for all applicants and team members. Team members are prohibited from making any hiring or other employment decision based on an applicant's or team member's race, color, religion, sex (including pregnancy, childbirth, or related medical conditions), age, marital status, national or ethnic origin, veteran status, uniformed service, protected disability status, genetic information, or any other characteristic protected by applicable law. ***In addition, Papa John's is committed to providing a workplace for its team members that is free of harassment or other intimidating, hostile or offensive behavior based on any of the above characteristics or any other characteristic protected by applicable law***.

(Emphasis added.)

27.    The 2013 10-K contained signed certifications pursuant to the Sarbanes-Oxley

Act of 2002 ("SOX") by Defendants Schnatter and Tucker, stating that the 2013 10-K "does not

contain any untrue statement of a material fact or omit to state a material fact necessary to make

the statements made, in light of the circumstances under which such statements were made, not

misleading with respect to the period covered by this report".

28.    On February 24, 2015, Papa John's filed an annual report on Form 10-K with the

SEC, announcing Papa John's financial and operating results for the quarter and year ended

December 31, 2014 (the "2014 10-K").  In the 2014 10-K, with respect to the significance of its

brand value and the potential impact of negative publicity, Papa John's again merely made the

following non-specific representation:

> *Our success depends on the differentiation of our brand and maintaining the value and quality reputation of our brand, and **any damage to consumers' perception of our brand may negatively impact our business and profitability***.

> Our results depend upon our ability to differentiate our brand and our reputation for quality. Our brand has been highly rated in U.S. surveys, and ***we strive to build the value of our brand*** as we develop international markets. The value of our brand and demand for our products could be damaged by incidents that harm consumer perceptions of the Company and our brand, such as product recalls,

> food safety issues, privacy breaches, or negative publicity. Any actions that persons endorsing our products may take, whether or not associated with our products, which harm their or our reputations could also harm our brand image and our reputation. Social media can be used to promote adverse consumer perceptions with significantly greater speed and scope than traditional media outlets.  As a result, the value of our brand and the demand for our products could be damaged and have an adverse effect on our financial results.

(Emphases added.)

29.     Likewise, in the 2014 10-K, with respect to its compliance with applicable laws and regulations, Papa John's again provided only the following non-specific representation:

> We are subject to numerous laws and regulations governing our workforce and our operations. Changes in these laws, including health care legislation and minimum wage increases or additional laws and regulations could increase costs for our system-wide operations. . . . We operate in an increasingly complex regulatory environment, and the cost of regulatory compliance is increasing. ***Failure to comply with applicable U.S. and international labor, health care, food, safety, anti-bribery and corruption, consumer and other laws, may result in civil and criminal liability, damages, fines and penalties. This could harm our reputation, limit our ability to grow and adversely affect our financial performance.***

30.     Additionally, Papa John's stated in the 2014 10-K that "[w]e have adopted a written code of ethics [the Code of Ethics and Business Conduct] that applies to our directors, officers and employees."  Upon information and belief, the Code of Ethics and Business Conduct contained the representations described *supra* at ¶ 26.

31.     The 2014 10-K contained signed certifications pursuant to SOX by Defendants Schnatter and Tucker, stating that the 2014 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report".

32.     On February 23, 2016, Papa John's filed an annual report on Form 10-K with the SEC, announcing Papa John's financial and operating results for the quarter and year ended

December 31, 2015 (the "2015 10-K").  In the 2015 10-K, with respect to its compliance with applicable laws and regulations, Papa John's again provided only the following non-specific representation:

> We operate in an increasingly complex regulatory environment, and the cost of regulatory compliance is increasing. ***Our failure, or the failure of any of our franchisees, to comply with applicable U.S. and international labor, health care, food, health and safety, consumer protection, anti-bribery and corruption, competition, environmental and other laws, may result in civil and criminal liability, damages, fines and penalties. Enforcement of existing laws and regulations, changes in legal requirements, and/or evolving interpretations of existing regulatory requirements may result in increased compliance costs and create other obligations, financial or otherwise, that could adversely affect our business, financial condition or operating results.*** Increased regulatory scrutiny of, and increased litigation and enforcement actions involving food matters and product marketing claims, may increase compliance and legal costs and create other obligations that could adversely affect our business, financial condition or operating results. Governments may also impose requirements and restrictions that impact our business.

(Emphasis added.)

33.     Additionally, Papa John's stated in the 2015 10-K that "[w]e have adopted a written code of ethics [the Code of Ethics and Business Conduct] that applies to our directors, officers and employees."  Upon information and belief, the Code of Ethics and Business Conduct contained the representations described *supra* at ¶ 26.

34.     The 2015 10-K contained signed certifications pursuant to SOX by Defendants Schnatter and Tucker, stating that the 2015 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report".

35.     On February 21, 2017, Papa John's filed an annual report on Form 10-K with the SEC, announcing Papa John's financial and operating results for the quarter and year ended

December 31, 2016 (the "2016 10-K").  In the 2016 10-K, with respect to the significance of its

brand value and the potential impact of negative publicity, Papa John's again merely made the

following non-specific representations:

> *Failure to preserve the value and relevance of our brand could have a negative impact on our financial results.*

> Our results depend upon our ability to differentiate our brand and our reputation for quality. ***Damage to our brand or reputation could negatively impact our business and financial results***. Our brand has been highly rated in U.S. surveys, and ***we strive to build the value of our brand*** as we develop international markets. The value of our brand and demand for our products could be damaged by any incidents that harm consumer perceptions of the Company.

> ***To be successful in the future, we believe we must preserve, enhance and leverage the value of our brand. Consumer perceptions of our brand are affected by a variety of factors***, such as the nutritional content and preparation of our food, the quality of the ingredients we use, ***our business practices*** and the manner in which we source the commodities we use. Consumer acceptance of our offerings is subject to change for a variety of reasons, and some changes can occur rapidly. ***Consumer perceptions may also be affected by third parties presenting or promoting adverse commentary or portrayals of our industry, our brand, our suppliers or our franchisees. If we are unsuccessful in managing incidents that erode consumer trust or confidence, particularly if such incidents receive considerable publicity or result in litigation, our brand value and financial results could be negatively impacted.***

(Emphases added.)

36.     Likewise, in the 2016 10-K, with respect to its compliance with applicable laws

and regulations, Papa John's provided only the following non-specific representations:

> We operate in an increasingly complex regulatory environment, and the cost of regulatory compliance is increasing. ***Our failure, or the failure of any of our franchisees, to comply with applicable U.S. and international labor, health care, food, health and safety, consumer protection, anti-bribery and corruption, competition, environmental and other laws, may result in civil and criminal liability, damages, fines and penalties. Enforcement of existing laws and regulations, changes in legal requirements, and/or evolving interpretations of existing regulatory requirements may result in increased compliance costs and create other obligations, financial or otherwise, that could adversely affect our business, financial condition or operating results.*** Increased regulatory scrutiny of food matters and product marketing claims, and increased litigation and

enforcement actions, may increase compliance and legal costs and create other obligations that could adversely affect our business, financial condition or operating results. Governments may also impose requirements and restrictions that impact our business.

(Emphasis added.)

37.     Additionally, Papa John's stated in the 2016 10-K that "[w]e have adopted a written code of ethics [the Code of Ethics and Business Conduct] that applies to our directors, officers and employees."  Upon information and belief, the Code of Ethics and Business Conduct contained the representations described supra at ¶ 26.

38.     The 2016 10-K contained signed certifications pursuant to SOX by Defendants Schnatter and Tucker, stating that the 2016 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report".

39.     On February 27, 2018, Papa John's filed an annual report on Form 10-K with the SEC, announcing Papa John's financial and operating results for the quarter and year ended December 31, 2017 (the "2017 10-K").  In the 2017 10-K, with respect to the significance of its brand value and the potential impact of negative publicity, Papa John's again merely made the following non-specific representation:

> *Failure to preserve the value and relevance of our brand could have a negative impact on our financial results.*
>
> Our results depend upon our ability to differentiate our brand and our reputation for quality. ***Damage to our brand or reputation could negatively impact our business and financial results***. Our brand has been highly rated in U.S. surveys, and we strive to build the value of our brand as we develop international markets. The value of our brand and demand for our products could be damaged by any incidents that harm consumer perceptions of the Company.

11

*To be successful in the future, we believe we must preserve, enhance and leverage the value of our brand. Consumer perceptions of our brand are affected by a variety of factors,* such as the nutritional content and preparation of our food, the quality of the ingredients we use, our business practices and the manner in which we source the commodities we use. Consumer acceptance of our offerings is subject to change for a variety of reasons, and some changes can occur rapidly. *Consumer perceptions may also be affected by third parties presenting or promoting adverse commentary or portrayals of our industry, our brand, our suppliers or our franchisees. If we are unsuccessful in managing incidents that erode consumer trust or confidence, particularly if such incidents receive considerable publicity or result in litigation, our brand value and financial results could be negatively impacted.*

(Emphases added.)

40.    Likewise, in the 2017 10-K, with respect to its compliance with applicable laws and regulations, Papa John's provided only the following non-specific representation:

We operate in an increasingly complex regulatory environment, and the cost of regulatory compliance is increasing. *Our failure, or the failure of any of our franchisees, to comply with applicable U.S. and international labor, health care, food, health and safety, consumer protection, anti-bribery and corruption, competition, environmental and other laws may result in civil and criminal liability, damages, fines and penalties. Enforcement of existing laws and regulations, changes in legal requirements, and/or evolving interpretations of existing regulatory requirements may result in increased compliance costs and create other obligations, financial or otherwise, that could adversely affect our business, financial condition or operating results.* Increased regulatory scrutiny of food matters and product marketing claims, and increased litigation and enforcement actions may increase compliance and legal costs and create other obligations that could adversely affect our business, financial condition or operating results. Governments may also impose requirements and restrictions that impact our business.

(Emphasis added.)

41.    Additionally, Papa John's stated in the 2017 10-K that "[w]e have adopted a written code of ethics [the Code of Ethics and Business Conduct] that applies to our directors, officers and employees." Upon information and belief, the Code of Ethics and Business Conduct contained the representations described supra at ¶ 26.

42.     The 2017 10-K contained signed certifications pursuant to SOX by Defendants Schnatter and Tucker, stating that the 2017 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report".

43.     The statements referenced in ¶¶ 23-42 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about Papa John's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Papa John's executives, including Defendant Schnatter, had engaged in a pattern of sexual harassment and other inappropriate workplace conduct at the Company; (ii) Papa John's Code of Ethics and Business Conduct was inadequate to prevent the foregoing misconduct; (iii) the foregoing conduct would foreseeably have a negative impact on Papa John's business and operations, and expose Papa John's to reputational harm, heightened regulatory scrutiny, and legal liability; and (iv) as a result, Papa John's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

44.     On July 10, 2018, post-market, and July 11, 2018, media outlets reported that Papa John's founder, Defendant Schnatter, had used a racial slur during a conference call in May 2018.

45.     On this news, Papa John's stock price fell $2.46 per share, or 4.84%, to close at $48.33 per share on July 11, 2018.

46.    Later that day, Papa John's announced Defendant Schnatter's resignation as chairman of Papa John's board.

47.    Then, on July 19, 2018, *Forbes* published an article entitled "The Inside Story of Papa John's Toxic Culture."[2]   Citing "interviews with 37 current and former Papa John's employees—including numerous executives and board members," the *Forbes* article reported that "Schnatter's alleged behavior ranges from spying on his workers to sexually inappropriate conduct, which has resulted in at least two confidential settlements."  Specifically, the *Forbes* article stated, *inter alia*:

- In order "[t]o protect himself [from accountability], Schnatter . . . installed loyalists in the firm's top ranks, who enabled its 'bro' culture.  That includes international president Tim O'Hern, a close friend of Schnatter's from Jeffersonville High School, as well as current CEO Steve Ritchie, who worked directly for Schnatter for three years and has run daily operations since 2014."

- "Six former executives question Ritchie's qualifications for the job of president, let alone CEO.  His one redeeming trait, they say: fealty.  When a Louisville publication named him to its Forty Under 40 list, in 2013, Ritchie was asked to name his role model. 'John Schnatter,' he answered."

- Papa John's corporate culture "declined" under Ritchie's tenure as president: "Multiple sources say meetings were filled with profanity and inappropriate comments.  Ritchie allegedly never intervened.  'These things would happen in meetings and conference rooms and whatever.  Steve [Ritchie] would just laugh.  He would just laugh.' says an individual present during such meetings."

48.    Significantly, the *Forbes* article addressed the extent to which Papa John's "culture impacted the business":

"[Ritchie] promoted people based on his personal relationship with them versus their results," says a former executive. Among the inner circle: Tim O'Hern, who was named president of international in May; VP of global technology operations Tim Newton; senior vice president of North American operations Edmond

---

[2] Available at  https://www.forbes.com/sites/forbesdigitalcovers/2018/07/19/the-inside-story-of-papa-johns-toxic-culture/.

Heelan; and Couts. Some of them are also tight with Schnatter. O'Hern would travel to his lake house using Schnatter's helicopter, with Couts sometimes tagging along.

One former executive describes Ritchie's leadership style as "knee-jerk," and says that he doesn't consult data. Another says he repeatedly failed to address logistical issues at Papa John's, for fear of angering Schnatter, who considers himself a master of operations. "You would look at our metrics and find that we had a huge percentage of people getting an inaccurate order," the executive recalls. But nothing was done. Infrastructure at Papa John's also lagged behind. "From a technology perspective, it wasn't the easiest company to work for," says Mark Nance, who left as vice president of digital solutions in 2016.

49.     On this news, Papa John's stock price fell $2.60 per share, or 4.85%, to close at $51.00 per share on July 19, 2018.

50.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Papa John's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Papa John's securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of Papa John's, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

52.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Papa John's securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds

or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Papa John's or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

53.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

54.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

55.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Papa John's;

- whether the Individual Defendants caused Papa John's to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Papa John's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

16

56.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

57.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Papa John's  securities are traded in an efficient market;

- Papa John's shares were liquid and traded with moderate to heavy volume during the Class Period;

- Papa John's traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of Papa John's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Papa John's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

58.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

59.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material

17

information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

60.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

62.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Papa John's securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Papa John's securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

63.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly

and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Papa John's securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Papa John's finances and business prospects.

64.     By virtue of their positions at Papa John's , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

65.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Papa John's, the Individual Defendants had knowledge of the details of Papa John's internal affairs.

66.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Papa John's.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Papa John's

businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Papa John's securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Papa John's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Papa John's securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

67.    During the Class Period, Papa John's securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Papa John's securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Papa John's securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Papa John's securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

68.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

69.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of Papa John's securities during the Class Period, upon the disclosure that Papa John's had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

70.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.     During the Class Period, the Individual Defendants participated in the operation and management of Papa John's, and conducted and participated, directly and indirectly, in the conduct of Papa John's business affairs.  Because of their senior positions, they knew the adverse non-public information about Papa John's misstatement of income and expenses and false financial statements.

72.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Papa John's financial condition and results of operations, and to correct promptly any public statements issued by Papa John's which had become materially false or misleading.

73.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Papa John's disseminated in the marketplace during the Class Period concerning Papa John's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Papa John's to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling

persons" of Papa John's within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Papa John's securities.

74. Each of the Individual Defendants, therefore, acted as a controlling person of Papa John's. By reason of their senior management positions and/or being directors of Papa John's, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Papa John's to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Papa John's and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

75. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Papa John's.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: August 30, 2018

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

23

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.  I, _Joanne E Donker_ , make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Papa John's International, Inc. ("Papa John's" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Papa John's securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Papa John's securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Papa John's securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.


Executed _08/16/2018_____
                  **(Date)**


_Joanne E. Danker_____
                    **(Signature)**

_Joanne E. Danker_____
             **(Type or Print Name)**

**PAPA JOHN'S INTERNATIONAL, INC. (PZZA)**                    **DANKER, JOANNE E.**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|---|---|---|---|
| 12/22/2017 | Purchase | 30 | $43.7200 |