**HOGAN LOVELLS US LLP**
390 Madison Avenue
New York, NY 10017
(212) 918-3000 (p)
(212) 918-3100 (f)

*Attorneys for Papa John's International, Inc. and Steve M. Ritchie*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>                      Plaintiff,<br><br>        v.<br><br>PAPA JOHN'S INTERNATIONAL, INC., JOHN H. SCHNATTER and STEVE M. RITCHIE,<br><br>                      Defendants. | Civil Action No. 18 Civ. 07927-KMW |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS
PAPA JOHN'S INTERNATIONAL, INC. AND STEVE M. RITCHIE'S
<u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT .............................................................................................................................3

I.     Plaintiffs' Opposition Does Not Remedy the SAC's Failure to Identify Any Actionable Misleading Statements. ......................................................................................................3

         A.     Defendants' Risk Disclosure Statements Are Not Misleading. ...............................3

         B.     Statements in Papa John's Code of Ethics Are Not Actionable. .............................5

         C.     The PSLRA Safe Harbor Applies to Predictions of Future Performance................7

II.    Defendants Did Not Have a Duty to Disclose the Alleged Wrongdoing. ..........................8

III.   Defendants Did Not Act With the Requisite Scienter. ........................................................9

CONCLUSION.................................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*In re Banco Bradesco S.A. Sec. Litig.*,
    277 F. Supp. 3d 600 (S.D.N.Y. 2017)..................................................................................7

*In re Braskem S.A. Sec. Litig.*,
    246 F. Supp. 3d 731 (S.D.N.Y. 2017)..................................................................................7

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014)..................................................................................................5

*Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*,
    433 F. Supp. 3d 515 (S.D.N.Y. 2020).......................................................................6, 7, 10

*In re Coty Inc. Sec. Litig.*,
    No. 14-cv-919 (RJS), 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016).................................3

*In re Eletrobras Sec. Litig.*,
    245 F. Supp. 3d 450 (S.D.N.Y. 2017) .................................................................................7

*Emps. Ret. Sys. of City of Providence v. Embraer S.A.*,
    No. 16 CIV. 6277 (RMB), 2018 WL 1725574 (S.D.N.Y. Mar. 30, 2018).........................7

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 487 (S.D.N.Y. 2013).............................................................................3, 8

*Ferris v. Wynn Resorts Ltd.*,
    No. 218CV00479GMNDJA, 2020 WL 2748309 (D. Nev. May 27, 2020).........................7

*In re Grupo Televisa Sec. Litig.*,
    368 F. Supp. 3d 711 (S.D.N.Y. 2019)..................................................................................6

*In re Liberty Tax, Inc. Sec. Litig.*,
    435 F. Supp. 3d 457 (E.D.N.Y. 2020) ................................................................................9

*Lopez v. CTPartners Exec. Search Inc.*,
    173 F. Supp. 3d 12 (S.D.N.Y. 2016)....................................................................................9

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2013) .......................................................................3, 10

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*
    681 F.3d 114 (2d Cir. 2012)..................................................................................................8

*In re Salix Pharmaceuticals*,
    No. 14-CV-8925, 2016 WL 1629341 (S.D.N.Y. 2016).......................................................8

*In re Signet Jewels Ltd. Sec. Litig.*,
  No. 16 Civ. 6728 (CM), 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) .......................6, 10

*In re TransDigm Grp., Inc. Sec. Litig.*,
  440 F. Supp. 3d 740 (N.D. Ohio 2020)..............................................................................7

*In re UBS AG Sec. Litig.*,
  No. 07-cv11225, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012).....................................3, 9

**Statute**

15 U.S.C. § 78u-5(c)(1)(A)(i) ...............................................................................................8

**Federal Rule**

Fed. R. Civ. P. 9(b) ...............................................................................................1, 2, 5

**PRELIMINARY STATEMENT**

Plaintiffs' opposition brief confirms that the SAC contains the <u>exact</u> same factual allegations and the <u>exact</u> same legal arguments that this Court previously rejected as insufficient under the PSLRA and Federal Rule of Civil Procedure 9(b).  Specifically, Plaintiffs concede that they simply "refocused" their allegations on Papa John's risk factors and the #MeToo movement while deemphasizing the Code of Ethics.  But all the refocusing, repackaging, and rehashing in the world cannot cure the core defect in Plaintiffs' case – Papa John's neither represented nor suggested to investors at any time that no workplace misconduct had occurred at the Company or that its senior management team would never become the subject of such allegations.

The Court should dismiss Plaintiffs' claims with prejudice for three reasons.  <u>First</u>, despite two opportunities to amend, Plaintiffs have failed to identify any material, actionable false statements by Papa John's.  Plaintiffs argue in their opposition that the SAC makes a "refocused" argument that the Company's risk factors were false and misleading because they disclosed workplace misconduct as a potential future risk when in fact such misconduct had (allegedly) already happened.  But "refocused" or not, this is not a new argument – it was considered and rejected by the Court as "speculative and unsupported."  *See* Dismissal Order at 16-18.  In the SAC, Plaintiffs cite the same Forbes articles and the same Schnatter letter that they cited in the FAC; there is no reason for the Court to revisit its prior conclusion.

Plaintiffs argue that they bolstered their risk factor allegations by adding details about the history of the #MeToo movement.  Once again, the Court already addressed this argument.  *Id*. at 17 ("[A]n increase in a risk does not mean that the risk has come to pass[.]").

Though by their own admission no longer the "primary" theory in the SAC, Plaintiffs continue to argue that Papa John's Code of Ethics contained actionable false statements.  But as

the Court concluded in dismissing the FAC, the Company's Code of Ethics continues to be aspirational in nature.  It contains no guarantees or representations about past or future compliance, and the Company never touted the Code of Ethics to reassure investors that its executive team had not been the targets of workplace misconduct allegations.

Second, Plaintiffs' "refocused" allegations in the SAC do not demonstrate that Papa John's had a duty to disclose the alleged workplace misconduct under Items 303 and 503 of Regulation S-K.  Plaintiffs fail to allege that the purported wrongdoing described in the Forbes articles was likely to become public and impact the Company's financial condition; rather, the bulk of Plaintiffs' amendments in the SAC focused primarily on providing additional detail about the #MeToo movement.  But Plaintiffs are simply hoping to use the importance of the #MeToo movement to distract from the fatal flaw in their theory:  no alleged misstatement identified in the SAC said anything about the #MeToo movement or declared that the Company's executives were unlikely or immune to becoming the subject of #MeToo scrutiny.

Finally, Plaintiffs have not alleged particularized facts giving rise to a strong inference that Papa John's or Ritchie acted with the requisite scienter.  They have presented no compelling allegations of motive or opportunity, whether in the form of suspicious insider stock sales or otherwise, and the only bases they offer to allege that wrongdoing was already occurring at the time the Company issued the challenged statements are the anonymous, unconfirmed statements in the Forbes articles and the vague, conclusory assertions in a letter drafted by Schnatter after he began regretting his decision to step down from his roles at the Company.  Neither of these sources has the necessary specificity required by the PSLRA and Rule 9(b), nor does either source specify the time at which the alleged wrongdoing occurred.  Without scienter, the SAC must be dismissed.

**ARGUMENT**

I.  **PLAINTIFFS' OPPOSITION DOES NOT REMEDY THE SAC'S FAILURE TO IDENTIFY ANY ACTIONABLE MISLEADING STATEMENTS.**

   A.  **Defendants' Risk Disclosure Statements Are Not Misleading.**

In its moving brief, Papa John's demonstrated that the SAC failed to plead facts showing that the Company's forward-looking risk factors were misleading. *See* Mov. Br. at 16-17. In opposition, Plaintiffs argue that the risks had come to pass based on two theories:[1] (1) "the #MeToo movement was well underway;" and (2) "Defendants had knowledge of their own misconduct and the hostile work and unlawful work environment at Papa John's at the time," based solely on the allegations in the Forbes articles and the letter Schnatter published on his "savepapajohns.com" website after leaving the Company. Opp. at 4. Both arguments fail.

As a preliminary matter, Plaintiffs have failed to remedy the issues caused by their exclusive reliance on the Forbes articles. While Plaintiffs may use anonymous sources as part of factual development, they are not allowed to rely on them alone. *See, e.g.*, *In re UBS AG Sec. Litig.*, No. 07-cv11225, 2012 WL 4471265, at *17, n.17 (S.D.N.Y. Sept. 28, 2012); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000) (newspaper article with anonymous sources allowable "in combination with plaintiff's investigative efforts").

Moreover, the general occurrence of the #MeToo movement cannot serve as a basis to infer that the risks of which Papa John's warned already had come to pass. First, the allegedly

---

[1]  Plaintiffs attempt to distinguish *In re Coty Inc. Securities Litigation* by arguing that the risks identified in the risk statements had already come to pass and were specific enough for investors to infer that there were no #MeToo allegations on the horizon. Opp. at 4-5. Not true. Like in *Coty*, "Plaintiffs have failed to allege facts to establish that any of these alleged events were occurring at the time of the [disclosures]" and are unable to identify any public disclosures that would have misled an investor about the "state of the company." No. 14-cv-919 (RJS), 2016 WL 1271065, at *11 (S.D.N.Y. Mar. 29, 2016). Plaintiffs' reliance on *In re Facebook* is also misplaced. Opp. at 5. Plaintiffs in *Facebook* alleged detailed facts showing that the company was already experiencing a substantial revenue decline at the time it made its risk disclosures. *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013).

3

misleading risk factors relate to the risk of damage to Schnatter's reputation impacting the Company; the risk that a violation of the labor laws could prompt regulatory investigation; and the risk that Papa John's "may be subject to harassment or discrimination claims and legal proceedings." *See, e.g.*, SAC, ¶¶ 85, 107, 119, 126. These risk factors do not align with the risk created by the #MeToo movement. None of these statements represented that no Papa John's individual could be accused of misconduct as part of the #MeToo movement or that no harassment had ever occurred at Papa John's. Second, and as this Court already has concluded, even if the #MeToo movement increased the risk that Papa John's financial condition could suffer if alleged wrongdoing by Schnatter or others was made public, "'[a]n increase in a risk does not mean the risk has already come to pass.'" Dismissal Order at *9. Third, the Company has not in fact faced any investigations into violations of labor laws or other harassment or discrimination claims prompted by the #MeToo movement (or otherwise) in connection with the wrongdoing alleged in the Forbes articles. In other words, the risks of which Papa John's warned still have not come to pass.

Plaintiffs also cannot rely on the Forbes articles or Schnatter's letter to franchisees to establish that any risk of reputational damages, risk of violation of labor laws, or risk of harassment or discrimination claims had already come to pass at the time the Company issued the SEC filings containing the risk factors. The Forbes articles, which were published months after the last Form 10-K cited in Plaintiffs' SAC, are not only unconfirmed, anonymous allegations of unadjudicated wrongdoing, but also do not contain any allegations regarding when the purported wrongdoing occurred. In fact, the only specific dates mentioned are those of the two settlements Schnatter allegedly entered into to resolve harassment allegations. Those

4

settlements occurred in 1999 and 2005, 16 and 9 years <u>before</u> the class period. The Forbes articles fail to provide the requisite particularity demanded by Rule 9(b).[2]

Similarly, Plaintiffs' reliance on the letter Schnatter wrote to franchisees is misplaced. The letter – which is no longer publicly available on the savepapajohns.com website – was written by Schnatter after he separated from the Company and posted on a website he created to try to convince the public that Papa John's management had conspired to oust him. The letter contains only vague and conclusory statements of wrongdoing. The SAC quotes the letter as stating that "[t]he company's HR department has detailed evidence of sexual misconduct, harassment and intimidation," SAC, ¶ 162, but neither the letter nor the balance of the SAC alleges any of those details or <u>when</u> the alleged misconduct occurred. Critically, nothing in that letter demonstrates that the alleged risk factors were misleading because the letter does not state that the Company suffered due to public image issues with Schnatter;[3] that the Company was facing regulatory action for violating labor laws; or that any harassment or discrimination claims had been filed against the Company.

### B.  Statements in Papa John's Code of Ethics Are Not Actionable.

In its moving brief, Papa John's demonstrated that its Code of Ethics was aspirational and did not contain specific statements that a reasonable investor could rely upon. Mov. Br. at 13. In opposition, Plaintiffs largely back away from their theory based on the Code of Ethics, stating instead that the SAC is "refocused" on the allegedly misleading risk factors. Opp. at 1.

---

[2] Plaintiffs' attempts to distinguish *City of Pontiac*, Opp. at 8 n.9, also fall short because, as even Plaintiffs note, the Department of Justice was in fact actively investigating UBS at the time of the disputed risk disclosure. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014). The SAC offers no allegation demonstrating that the risks warned of in the Company's SEC filings had already transpired.

[3] Schnatter's letter is particularly irrelevant regarding the claims against Ritchie. Plaintiffs do not cite any portion of the letter that accuses Ritchie individually of any misconduct or any portion that suggests that Ritchie individually knew of any wrongdoing by Papa John's executives or Board members.

Plaintiffs then perfunctorily argue that statements in the Code of Ethics were specific enough to differentiate them from the numerous cases finding codes of ethics inactionable. *Id.* at 15-17. The SAC offers no reason for the Court to reconsider its prior conclusion that "[t]he statements in the Code are quintessential puffery." Dismissal Order at *6.

"Courts have allowed claims based on alleged misrepresentations contained in a code of ethics or conduct to survive a motion to dismiss only in rare circumstances." *Id.* While Plaintiffs cite to a handful of cases where claims based on codes of ethics survived a motion to dismiss, Opp. at 15, these cases actually support Papa John's argument. For example, while the court in *In re Signet Jewelers* found some actionable statements in the defendant's code, those actionable statements were specific promises that the company was alleged to have been breaking at the time the code was published, and the court distinguished them from the broader, aspirational statements that were not actionable.[4] *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *17-18 (S.D.N.Y. Nov. 26, 2018) ("Defendants' generalized statements touting the importance of Signet's relationship with its employees and consumer trust in the Signet brand" were not actionable). Similarly, *CBS* and *In re Grupo Televisa.* both involved allegations of actions that contradicted specific, concrete statements in the companies' codes of ethics, rather than the "quintessential puffery" that exists in this case. Dismissal Order at *6; *see Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 533 (S.D.N.Y. 2020) ("CBS represented that it 'will' take 'all steps' and 'remedial action' to stop 'sexual harassment' and 'protect the workplace environment'"); *In re Grupo Televisa Sec. Litig.*, 368 F. Supp. 3d 711, 722 (S.D.N.Y. 2019) ("Defendants' numerous statements here proclaimed the concrete steps

---

[4] In particular, Signet's code promised that employees were hired purely on their merits when, at the same time, the company allegedly made personnel decisions based "on whether female employees acceded to sexual demands." *Id.* at *17. The plaintiffs' claims were supported by "approximately 250 declarations from nearly 200 employees detailing their experiences" at the company. *Id.* at *5.

6

Televisa was taking to ensure that its executives and employees did not violate the prohibition on bribery.").

Courts have dismissed codes of ethics cases where defendants used far more absolute language in their codes than Papa John's. *See, e.g.*, *Ferris v. Wynn Resorts Ltd.*, No. 218CV00479GMNDJA, 2020 WL 2748309, at *14 (D. Nev. May 27, 2020) (dismissing claims based on statement that harassment "of any sort will not be tolerated"); *In re TransDigm Grp., Inc. Sec. Litig.*, 440 F. Supp. 3d 740, 766 (N.D. Ohio 2020) (dismissing claims based on statements regarding "longstanding policy" to "conduct its business lawfully and ethically"); *CBS*, 433 F. Supp. 3d at 533 (dismissing claims based on statement about "'zero tolerance' policy"); *Emps.' Ret. Sys. of City of Providence v. Embraer S.A.*, No. 16 CIV. 6277 (RMB), 2018 WL 1725574, at *8 (S.D.N.Y. Mar. 30, 2018) (dismissing claims based on statement that company "seeks to adhere to all laws"); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 656-58 (S.D.N.Y. 2017) (dismissing claims based on statements that harassment was "forbidden" and "prohibited"); *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 756 (S.D.N.Y. 2017) (dismissing claim based on statement "forbidding" bribery). As this Court previously concluded, "[n]o reasonable investor could have relied on the [Papa John's] Code's standard and vague assurances in making investment decisions."[5] Dismissal Order at *7.

### C. The PSLRA Safe Harbor Applies to Predictions of Future Performance.

In its moving brief, Papa John's demonstrated that statements about future performance were not actionable because they fell within the PSLRA's safe harbor.[6] Mov. Br. at 15-16; *see*

---

[5] Plaintiffs cite *In re Eletrobras Securities Litigation*, but there the defendants emphasized their code when denying rumors that they were a part of a group of companies under government investigation when, in reality, they were also being investigated. *See* 245 F. Supp. 3d 450, 463-64 (S.D.N.Y. 2017).

[6] *See* SAC, ¶ 128 ("[W]e expect to see marked improvements in sales later in 2018"); ¶ 132 (the "future is bright domestically" and "I'm very confident the business will come back").

7

15 U.S.C. § 78u-5(c)(1)(A)(i).  Plaintiffs argue that the safe harbor provision did not cover these statements because they included current facts.  Opp. at 18, n.23.  Plaintiffs are wrong because the statements concerned future sales expectations and generalities about the predicted health of the company while being accompanied by a host of risk factors.[7]  *See, e.g.*, ECF No. 89, Regan Decl., Ex. 1 (2017 10-K) at 12-21; Ex. 15 (press release dated Feb. 27, 2018) at 11-12.

## II. DEFENDANTS DID NOT HAVE A DUTY TO DISCLOSE THE ALLEGED WRONGDOING.

In its moving brief, Papa John's demonstrated that it was not obligated to disclose the unproven and unadjudicated allegations of wrongdoing under Items 303 and 503 of Regulation S-K.  Mov. Br. at 17-20.  Plaintiffs argue in opposition that Papa John's did have a duty to disclose because management knew about these allegations, which were likely to affect revenue.  Opp. at 9-13.  Plaintiffs are wrong because they use the same factual and legal arguments and still have not adequately pled the existence of an uncertainty that was "both presently known to management and reasonably likely to have material effects on the registrant's financial conditions or results of operations."  Dismissal Order at *9.

Plaintiffs cite to *Facebook* and *Panther Partners Inc. v. Ikanos Communications, Inc.* in support of their proposition that Papa John's should have disclosed the Forbes allegations.  Opp. at 9.  Neither case is applicable.  Facebook was already losing revenue to mobile users when it claimed that such an outcome was only possible.  986 F. Supp. 2d at 511-12.  Similarly, the defendants in *Panther Partners* knew a product accounting for a significant portion of revenue was defective when making statements downplaying the situation's severity.  681 F.3d 114, 121-22 (2d Cir. 2012).

---

[7]    Plaintiffs' only legal authority for this proposition is the same one on which they previously relied:  *In re Salix Pharmaceuticals*.  Opp. at 18, n. 23.  There, the court found that the defendants' statements were about <u>current</u> inventory levels, and thus based on present fact.  No. 14-CV-8925 (KMW), 2016 WL 1629341, at *10 (S.D.N.Y. Apr. 22, 2016).  Here, all of the Company's statements were forward-looking.

8

Plaintiffs urge the Court to distinguish the facts here from those in *Lopez v. CTPartners Executive Search Inc.* because Defendants are living in a post-#MeToo world where allegations of harassment fall within Item 303.  Opp. at 10-11 (citing 173 F. Supp. 3d 12 (S.D.N.Y. 2016)).  However, Plaintiffs have not made any allegations to alter the Court's prior conclusion that the possibility that the Forbes article would come to light and affect Defendants' bottom line "rest[ed] on a tenuous chain of causality and falls short of a known risk, disclosure of which Item 303 would mandate."  Dismissal Order at *9; *see also In re Liberty Tax, Inc. Sec. Litig.*, 435 F. Supp. 3d 457, 469 (E.D.N.Y. 2020) (no requirement to disclose harassment allegations).

### III. DEFENDANTS DID NOT ACT WITH THE REQUISITE SCIENTER.

In its moving brief, Papa John's demonstrated that it did not act with scienter because insider stock sales were not suspicious in amount or timing, Plaintiffs allege insufficient circumstantial evidence, and the most reasonable inference is non-fraudulent.  Mov. Br. at 21-25.  Plaintiffs argue in opposition that Ritchie either consciously or recklessly disregarded the risks alleged in the Forbes article, that insider stock trades were suspicious, and that the only compelling inference was scienter.  Opp. at 18-25.  Plaintiffs are wrong because they do not allege facts to show that Ritchie knew, or should have known, that any statements were false or misleading and because the cited stock sales were not suspicious.

Plaintiffs' only basis for their claim that Ritchie "participated directly in, and had extensive knowledge of, the misconduct" is the Forbes articles.[8]  Opp. at 19.  Despite what Plaintiffs claim, a news article based on anonymous quotes regarding unadjudicated wrongdoing is not enough to allege scienter.  Plaintiffs cannot rely on "parroted allegations for which counsel has not conducted independent investigation."  *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at

---

[8] As noted, the Schnatter letter lacks specificity and nowhere suggests that Ritchie knew of any wrongdoing.

9

*17 n.17; *McKesson*, 126 F. Supp. 2d at 1272.  Furthermore, the cases Plaintiffs cite for this proposition are distinguishable.  *See Signet*, 2018 WL 6167889, at *5, 18 (investigation buttressed by declarations from 200 employees); *CBS*, 433 F. Supp. 3d at 526-28 (allegations supported by criminal complaints).

Plaintiffs attempt to rely on various percentages they calculate by comparing the Class Period to a "Control Period," which Plaintiffs define as the 1,625 day period preceding the Class Period and falling between September 14, 2009 and February 24, 2014.  Opp. at 21-23.  This "magic math" does not make the stock sales suspicious for several reasons.  First, the Class Period is over four years long, making any inference about why Ritchie did or did not sell inherently speculative.[9]  Second, nothing in Plaintiffs' argument changes that Ritchie's last sale was over a year before the Forbes article, a period long enough to negate any potential inference of scienter.  Mov. Br. at 22.[10]

## CONCLUSION

Defendants respectfully request that the Court dismiss the SAC with prejudice.[11]

Dated:   New York, New York
         September 4, 2020

                                        HOGAN LOVELLS US LLP

                                        By:   /s/ William M. Regan

---

[9] Plaintiffs continue to try to use Ritchie's lack of a 10b5-1 plan to show scienter. Opp. at 22-23. As noted in Papa John's moving papers, 10b5-1 plans are a defense to insider trading and the absence of a plan does not mean the trade violated insider trading laws. Therefore, Plaintiffs' conclusion that Ritchie traded "while in possession of material, non-public information" is baseless. Opp. at 23.

[10] Plaintiffs also argue that the trading activity of the eight non-parties that Plaintiffs cite is relevant to this Court's analysis. *See* Opp. at 22. While Plaintiffs are incorrect for the reasons cited in the Company's moving brief, Mov. Br. at 23 (citing case law affirmed by the Second Circuit), it is notable that Plaintiffs say nothing about the ten insiders that they ignored completely, tacitly acknowledging that their set of eight insiders is cherry-picked – yet another reason the trading of those non-party insiders should be ignored. *See also id.* at 23.

[11] For the reasons stated in Defendants' moving brief, Plaintiffs have not stated a claim under § 20(a) against Ritchie. Mov. Br. at 25. Plaintiffs' opposition offers no meaningful rebuttal.

William M. Regan
william.regan@hoganlovells.com

Allison M. Wuertz
allison.wuertz@hoganlovells.com

390 Madison Avenue
New York, NY 10017
(212) 918-3000 (p)
(212) 918-3100 (f)

*Attorneys for Papa John's International, Inc. and Steve M. Ritchie*